IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: NATIONAL MEDICAL | : | |
| IMAGING, LLC | : | Case No. 08-17351JKF |
| Putative Debtor | : | |

| | | |
|---|---|---|
| In re: NATIONAL MEDICAL IMAGING | : | Case No. 08-17348JKF |
| HOLDING COMPANY, LLC | : | |
| Putative Debtor | : | |

# MEMORANDUM  OPINION

# I.  INTRODUCTION

Before me is the Motion of National Medical Imaging, LLC ("NMI") and

National Medical Imaging Holding Company, LLC ("NMIH") for a Determination of

Collateral Estoppel and Postponement of Evidentiary Hearing on Motion To Dismiss (the

"Motion")[1] (docket entry no. 140).[2]  NMI and NMIH (together, the "Putative Debtors")

---

[1] The Motion also sought the postponement of an evidentiary hearing on the Putative Debtors' motion to dismiss, which had been scheduled to begin on August 25, 2009.  I granted that postponement portion of the Motion on August 25, 2009, when I deferred a hearing on the motion to dismiss pending my determination whether these cases should be dismissed upon the

contend that the dismissal with prejudice of a closely related involuntary bankruptcy

petition in the Bankruptcy Court in the Southern District of Florida by Judge A. Jay

Cristol on August 21, 2009, warrants dismissal of these involuntary petitions pursuant to

the doctrine of issue preclusion, formerly known as collateral estoppel.[3]  The creditors

who filed the petitions oppose the relief sought and contend that factual and legal

differences require that I deny the Motion.  See Memorandum of Law in Opposition to (1)

Motion of the Putative Debtors for a Determination of Collateral Estoppel and (2) Motion

for Reconsideration of Bench Order on Judicial Estoppel, together, the "Opposition

Memorandum," docket entry no. 159.  For the reasons discussed below, I will grant the

Motion.  Because collateral estoppel applies, I will dismiss with prejudice both

involuntary petitions.

---

application of collateral estoppel.

[2] All docket entry numbers refer to documents filed in the NMI case (No. 08-17351).
Substantially similar documents have also been filed in the NMIH case (No. 08-17348), but the
docket numbers are not the same.

[3] Through this Memorandum Opinion, I refer to one or the other of the historic or current
terms  –  collateral estoppel or issue preclusion  – because both continue to be used in other
court's decisions and remain virtually interchangeable.

2

# II. PROCEDURAL AND FACTUAL BACKGROUND

## A. Procedural Background

On November 7, 2008 (the "Petition Date"), six creditors[4] (together, including replacement parties, the "Creditors") filed two involuntary bankruptcy petitions in this Court against the Putative Debtors.  The Creditors amended the involuntary petitions three times:  On November 10, 2008; April 10, 2009; and August 26, 2009.[5]

On the Petition Date, the same Creditors also filed an involuntary petition in this court against Maury Rosenberg,[6] the Managing Member of both Putative Debtors and a co-guarantor of the obligations of the Putative Debtors in a settlement agreement[7] dated August 12, 2005.  On December 3, 2008, Rosenberg moved to dismiss or, alternatively, to

---

[4] The six original creditors were:  DVI Receivables XIV, LLC.; DVI Receivables XVI, LLC.; DVI Receivables XVII, LLC.; DVI Receivables XVIII, LLC.; DVI Receivables XIX, LLC.; and DVI Funding, LLC.  Ashland Funding, LLC., replaced DVI Funding, LLC., as a petitioning creditor in the second amended involuntary petition.  See docket entry no. 55.

[5] The third motion to amend the involuntary petitions was permitted only upon a contest to the motion by the Creditors (docket entry no. 68).  I conducted a hearing on both the third motion to amend and on the Putative Debtors' motion to strike the second amended petitions (docket entry no. 70) on August 24, 2009.  At that hearing, I determined both (1) that no prejudice would occur if the amended petitions were permitted to be filed and (2) that the Putative Debtors had not stated sufficient reasons to strike the second amended petitions.  I granted the motion to amend; and I denied the motion to strike.

[6] Case No. 08-17346 (the "Rosenberg Case").

[7] The settlement agreement is discussed in detail below.

3

transfer venue to his domicile in southern Florida (docket entry no. 7 in the Rosenberg

Case). The Creditors agreed to the change of venue and, by Order dated January 30,

2009, Judge Jean K. FitzSimon[8] transferred the Rosenberg Case to the Southern District

of Florida (docket entry no. 22). The Rosenberg Case was then closed in this Court.

Judge Cristol held a trial on the Rosenberg motion to dismiss in the Florida Court on

April 20, 2009. As I discuss below, on August 21, 2009, Judge Cristol issued his opinion

granting Mr. Rosenberg's motion to dismiss with prejudice. See In re Rosenberg, 414

B.R. 826 (Bankr. S.D. Fla. 2009) (the "Opinion").

        The Putative Debtors had also filed motions to dismiss the involuntary

petitions against them on December 4, 2008 (the "Motions To Dismiss," docket entry no.

10). The Creditors opposed the Motions To Dismiss (docket entry no. 16) and the

Putative Debtors filed a reply brief (docket entry no. 23). The parties conducted

discovery in the pending matters – apparently with numerous and sundry disputes – and

trial on the merits was scheduled to begin before me in Reading, Pennsylvania, on August

25, 2009. On August 24, 2009, I conducted a preliminary hearing to determine certain

pretrial issues, including a motion in limine (docket entry no. 136) and a motion to

determine judicial notice (docket entry no. 139). At the August 24, 2009 hearing, I

entered a bench order denying both parties' requests to exclude certain evidence at the

trial pursuant to the doctrine of judicial estoppel (docket entry no. 137).

---

[8] The cases were transferred from Judge FitzSimon to Judge Richard E. Fehling on
August 11, 2009 (docket entry no. 110).

4

The night before commencement of the trial on August 25, 2009, the parties received notice that Rosenberg's involuntary bankruptcy petition in Florida had been dismissed with prejudice by Judge Cristol. In the early hours of the morning on August 25, 2009, the Putative Debtors filed the pending Motion. Although Judge Cristol issued his Opinion on August 21, 2009, the accompanying order had not been docketed until August 24, 2009, the day of the preliminary hearing. On August 25, 2009, I therefore heard the Motion on an expedited basis, in lieu of starting the trial.

At the hearing on the Motion, I took under advisement whether collateral estoppel should apply and allowed both parties to brief the issue. Judge Cristol based his decision, in part, on his determination that judicial estoppel precluded the Creditors from prosecuting the involuntary petition against Rosenberg. I therefore invited the parties to move for reconsideration of my August 24, 2009 bench order insofar as I denied the parties' requests to apply judicial estoppel to these cases. Both parties have sought reconsideration of my ruling on that issue. I heard oral argument on September 22, 2009 ("Oral Argument"), and the parties have filed their briefs. This matter is therefore ripe for adjudication.

This Memorandum Opinion constitutes my findings of fact and my conclusions of law.

## B.  Factual Background

I find the following, uncontested, facts from the Amended Joint Pretrial Statement (docket entry no. 83), the case docket, and the pleadings.  DVI Financial Services, Inc., ("DVI Financial") was a finance company that provided loans and lease financing to health care providers.  Beginning in November 2000, certain Lessees (the "NMI LPs") (defined and listed more specifically on page two of NMI's motion to dismiss (docket entry no.10)) entered into various master leases (the "Master Leases") to finance the acquisition of medical imaging and PET scanning equipment used for MRIs. NMI is a service company that performs management, billing, and collection services for diagnostic imaging centers.  NMI is the limited partner of each of the NMI LPs.  NMIH is a general partner of each NMI LP.  Maury Rosenberg is the Managing Member of both NMI and NMIH.

The Master Leases were part of a securitization transaction between DVI Financial, U.S. Bank, N.A. as Trustee, and Lyon Financial Services, Inc. ("Lyon") d/b/a/ U.S. Bank Portfolio Services ("USBPS"), as agent for U.S. Bank (the "Agent").  The Master Leases were transferred and or assigned by DVI Financial to other DVI related entities.  The Master Leases were pledged to investors as collateral with USBPS acting as agent for U.S. Bank.  As security for the payment of the obligations of the NMI LPs under the Master Leases, Rosenberg was required to execute and deliver an individual

6

limited guaranty to DVI Financial.  The Putative Debtors were also required to execute

and deliver separate guarantees to DVI Financial.

      At various times from 2000 to 2003 and pursuant to the terms of certain

Contribution and Servicing Agreements, DVI Financial transferred and assigned the

Master Leases and related assets to the DVI entities identified as the original creditors in

footnote 5, above.  In 2003, DVI Financial's parent company, DVI, Inc., began

experiencing financial difficulties.  Certain DVI companies filed Chapter 11 bankruptcy

petitions on August 3, 2003, in Delaware (consolidated cases nos. 03-12656 through 03-

12658); the companies filing for protection were DVI Financial, DVI, Inc., and DVI

Business Credit Corp.  On February 3, 2004, the Delaware Bankruptcy Court approved a

settlement agreement in which DVI Financial, among other things, assigned its rights to

service the Master Leases to Lyon, which is owned by USBPS.

      While in bankruptcy on November 5, 2003, DVI, Inc., filed an adversary

proceeding in the Delaware Bankruptcy Court against the Putative Debtors and

Rosenberg, alleging that they had defaulted on certain of the Master Leases (adversary no.

03-57568).  The Delaware Bankruptcy Court dismissed the complaint (granting a motion

to dismiss).  In re DVI, Inc., 305 B.R. 414 (Bankr. D. Del. 2004).

      Beginning on or about December 19, 2003, and following a settlement

approved by the Delaware Bankruptcy Court, Lyon (as servicer to the DVI entities)

declared the Master Leases to be in default and initiated state court proceedings against

each of the NMI LPs and Rosenberg in the Court of Common Pleas of Bucks County,

Pennsylvania, alleging breach of contract, breach of guaranties, and replevin (the "Original Bucks County Action"). On March 3, 2005 (while the Original Bucks County Action was pending), three creditors filed involuntary Chapter 11 petitions against the Putative Debtors in the Eastern District of Pennsylvania.[9]

On August 12, 2005, the Putative Debtors, National Medical Imaging of Broad Street, L.P. ("Broad Street"), Rosenberg, Lyon d/b/a USBPS, and others entered into a settlement (the "Settlement Agreement")[10] (docket entry no. 158 - "Main Document"). Pursuant to the terms of the Settlement Agreement, the Master Leases were consolidated into a single obligation. SA, p.3. The Settlement Agreement further provides that the total amount due and owed by the NMI LPs to Lyon and USBPS is $23,881,557.[11] SA, §2(i). The Settlement Agreement required the Putative Debtors, Broad Street, and Rosenberg to execute a new guaranty, SA, §2(a)(iv), and cancelled the Original Bucks County Action. SA, §4(h).

In connection with the Settlement Agreement, the Putative Debtors executed an Unconditional Continuing Guaranty (the "NMI Guaranty") for the Master Leases, as modified and consolidated by the Settlement Agreement (docket entry no. 158,

---

[9] General Electric Capital Corp. and Universal Shielding Corp. joined as petitioning creditors in the 2005 involuntary petitions.

[10] When citing portions of the Settlement Agreement, I will refer to it as "SA."

[11] This sum is divided into two parts: $15,124,920- the "Amortized Obligations," and $8,756,637 - the "Unsecured Obligations." SA, §2(i).

Exhibit 1-B). Paragraph 16 of the NMI Guaranty required the Putative Debtors to execute a confession of judgment in the amount owed to Lyon as the agent.

In further connection with the Settlement Agreement, Rosenberg executed an Individual Limited Guaranty (the "Rosenberg Guaranty") for the Master Leases, as modified by the Settlement Agreement (docket entry no. 89, Exhibit 1-C). Paragraph 17 of the Rosenberg Guaranty likewise contains a confession of judgement clause, mandating Rosenberg to execute a confession of judgment for the amount owed to the agent (Lyon) (Id. at ¶17). Paragraph 16 of the Rosenberg Guaranty limits Rosenberg's exposure to $7,661,945.

In July 2008, Lyon, as agent for U.S. Bank, filed a complaint in confession of judgment in favor of Lyon and against the Putative Debtors, Rosenberg, and others in the Court of Common Pleas of Bucks County, Pennsylvania (the "Second Bucks County Action") (docket entry no. 10, Exhibit PD-7 and docket entry 105, Exhibit 48). On August 22, 2008, NMI, NMIH, and Rosenberg filed a petition to strike or open the confessed judgement in the Second Bucks County Action. Id. The Bucks County Court stayed execution on the confessed judgment on August 28, 2008. On September 11, 2008, Lyon filed a response to the petition to strike or open, denying the allegations but acknowledging that the amount of the confessed judgment obtained against the Putative Debtors and Rosenberg was overstated by $58,351.40 (docket entry no. 83-2, Exhibit A, p. 12).

9

## C.  Judge Cristol's Opinion

As mentioned above, Bankruptcy Judge Cristol in the Southern District of Florida presided over the Rosenberg Case and issued his Opinion on August 21, 2009, dismissing with prejudice Rosenberg's involuntary bankruptcy petition. In re Rosenberg, 414 B.R. 826 (Bankr. S.D. Fla. 2009).  Judge Cristol dismissed the Rosenberg petition on six bases.  These six grounds are independent of each other and I will discuss each in turn.  First, because "there is no guaranty executed by Rosenberg in favor of any of the Original Petitioning Creditors or Ashland Funding," none of these alleged creditors is in fact a creditor of Rosenberg. Id. at 840.  That is, the Rosenberg Guaranty runs in favor of the agent Lyon exclusively. Id.  Second, the Creditors are merely "special purpose entities" rather than "real parties in interest" and are therefore not entitled to assert any claims against Rosenberg. Id. at 841.  Because the Creditors are nothing more than "pass through entities," an "actual injury" cannot be remedied by the petitions. Id. at 842. Therefore, the Creditors lack standing to pursue Rosenberg in bankruptcy. Id.

Third, the Creditors are judicially estopped from prosecuting the case. Id. at 842.  In July 2008, Lyon – not the Creditors – filed the Second Bucks County Action. Id. at 842.  The involuntary petition was filed against Rosenberg by the six Creditors rather than by Lyon, the agent (a single entity) "to artificially create six creditors for the improper purpose of attempting to satisfy the provisions of Section 303(b) of the Bankruptcy Code." Id. at 843.  Fourth, the Rosenberg Guaranty runs exclusively to Lyon,

and the Creditors do not have separate and distinct claims under the Rosenberg Guaranty for purposes of Section 303(b). Id. Fifth, the Settlement Agreement is deemed to be a novation -- "a mutual agreement between the parties for the discharge of a valid existing obligation by the substitution of a new valid obligation." The creation of the novation eliminated the individual obligations owed to the Creditors and replaced them with a single obligation owed to Lyon, the agent. Id.

Finally, the Creditors hold only contingent claims that are subject to a *bona fide* dispute. Id. at 844-48. The claim is contingent because Rosenberg's liability was never triggered by a demand for payment as necessitated per the Rosenberg Guaranty. Id. at 844. Moreover, the claim is subject to a *bona fide* dispute because the parties disagree about both the validity and the amount of the confessed judgment in the Second Bucks County Action. Id. As Judge Cristol concluded, "Rosenberg has put forth sufficient evidence to show that there are genuine issues of material fact, as well as legal questions, bearing upon not only the amount of the claim, but also the alleged liability of Rosenberg to Lyon, even if Lyon were the one to have directly signed the Original Involuntary Petition." Id. at 848.

# III. DISCUSSION

## A.  The Law Regarding Collateral Estoppel

Collateral estoppel prevents subsequent litigation of an issue of fact or law that had been determined and resolved in a prior court proceeding. New Hampshire v. Maine, 532 U.S. 742, 748-49 (2001).  The doctrine applies when each of the following four elements is satisfied:  (1) An issue decided in a prior action is identical to one presented in a later action; (2) the prior action resulted in a final judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action. Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc., 571 F.3d 299, 310 (3d Cir. 2009).  The party asserting collateral estoppel bears the burden of showing that it applies. U.S. v. Athlone Industries, Inc., 746 F.2d 977, 983 (3d Cir. 1984).

Collateral estoppel serves several purposes.  First, it protects parties from the burden of relitigating the same issue with the same party. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979).  Second, the doctrine promotes judicial efficiency by

encouraging plaintiffs to join all relevant parties in the first action.[12]  Id.  Third, collateral

estoppel promotes reliance on judicial action by reducing the likelihood of an inconsistent

judgment.  Oregon v. Guzek, 546 U.S. 517, 526 (2006).  As the Third Circuit has recently

observed:

> [A] losing litigant deserves no rematch after a defeat fairly suffered, in adversarial
> proceedings, on an issue identical in substance to the one he subsequently seeks to
> raise.  To hold otherwise would, as a general matter, impose unjustifiably upon
> those who have already shouldered their burdens, and drain the resources of an
> adjudicatory system with disputes resisting resolution.

Duvall v. Attorney Gen. of the U.S., 436 F.3d 382, 387 (3d Cir. 2006) (citation omitted).


## B.  Application of Collateral Estoppel to the Pending Cases


The only prongs of collateral estoppel that are in contention between the

parties are (1) whether the Creditors receive a full and fair opportunity to litigate in

Florida and (2) whether the issues in these two matters are identical.  The Creditors do not

dispute that Judge Cristol's ruling resulted in a final judgment on the merits,[13] nor do they

---

[12] This benefit does not apply in "offensive collateral estoppel," or when collateral
estoppel is used by a plaintiff.  See Parklane Hosiery, 439 U.S. at 330.

[13] The Creditors accept that the Opinion is a final judgment on the merits.  They have,
nevertheless, moved for a rehearing and intend to appeal from the Opinion if rehearing is denied.
Opposition Memorandum at 5.  For now, however, Judge Cristol's ruling stands.  "[P]rior legal
and factual determinations made [in a court] are binding in this proceeding under the principles
of res judicata and collateral estoppel despite the filing of an appeal by the debtor, unless and
until such findings are overturned."  In re Pensignorkay, Inc., 204 B.R. 676, 678 (Bankr. E.D. Pa.
1997).  See also Banks v. Hayward, No. Civ. A. 06-1572, 2007 WL 120045, at *4 n.6 (W.D. Pa.
Jan 10, 2007).

argue that the Putative Debtors are not in privity with Rosenberg. See e.g., Transcript of

Oral Argument held on September 22, 2009, docket entry no. 165 (hereinafter referred to

as "Pa. Tr.") at 24.  In addition to raising objections to two of the four prongs of the

collateral estoppel test, the Creditors contend that I may not apply Judge Cristol's ruling

regarding judicial estoppel because different legal standards apply in the respective circuit

courts.  I will address these issues in turn.

## 1. Full and Fair Opportunity to Litigate

I reject the Creditors' contention that they did not receive a full and fair

opportunity to litigate before Judge Cristol.  The Creditors assert that some of the legal

doctrines relied on by Judge Cristol – judicial estoppel, real party in interest, party in

interest under 11 U.S.C. §1109(b), and novation – had not been raised before the April

20, 2009 trial in Florida.  Opposition Memorandum at 14.  The chief complaint of the

Creditors is that those legal theories had not been pled by Rosenberg before the April 20,

2009 hearing.  Nevertheless, the Creditors argue, Judge Cristol relied on them, in part, in

his Opinion.  The Creditors claim that they lacked sufficient time to research, develop,

articulate, and argue these issues to Judge Cristol.   See e.g, Pa. Tr. at 26 ("you hear about

a legal doctrine for the first time at trial and you haven't conducted any discovery as to

that doctrine, you haven't submitted documents that you think may present a contrary

view on that document [sic] . . .. That deprives you of a full and fair opportunity to

litigate.")

14

The Creditors, however, concede both that "some of the underlying facts relied on by Judge Cristol were put forward by Rosenberg in his pre-trial court filings" and that "Judge Cristol gave the parties the opportunity to submit proposed findings of fact and conclusions of law after the April 20 trial."  Opposition Memorandum at 15 (emphasis omitted).  The Creditors had a clear right either to present their suggested findings of fact or to move immediately for a re-hearing if they believed that they were short-changed somehow in their pre-hearing preparation.[14]

I have compared the Creditors' allegations that they were deprived of a full and fair opportunity to litigate with the transcripts of both the hearing before Judge Cristol and the Oral Argument before me.   Upon that comparison, I find and conclude that the Creditors did, in fact, have a "full and fair opportunity" to litigate these issues.

A party lacks a "full and fair opportunity to litigate" only when such party is denied due process of law.  Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1074 (3d Cir. 1990) (Plaintiff's "failure to avail himself of available procedures" did not constitute a lack of a full and fair opportunity to litigate) (citing Kremer v. Chemical Const. Corp., 456 U.S. 461 (1982)).  In other words, "as long as a prior federal court judgment is procured in a manner that satisfies due process concerns, the requisite 'full and fair

---

[14] The Creditors also had the right and the obligation to call to Judge Cristol's attention, during the April 20, 2009 trial, that they perceived themselves to be at a disadvantage in addressing all of the issues.  They did not do so, thereby preventing Judge Cristol from possibly avoiding this issue by granting them additional time.

opportunity' existed" for purposes of collateral estoppel. <u>Pactiv Corp. v. Dow Chemical Co.</u>, 449 F.3d 1227, 1233 (Fed. Cir. 2006) (quotations and citations omitted).

What is required for due process in a civil case is "proper notice and service of process and a court of competent jurisdiction; procedural irregularities during the course of a civil case, even serious ones, will not subject the judgment to collateral attack." <u>Pactiv</u>, 449 F.3d at 1233, <u>quoting</u> <u>Fehlhaber v. Fehlhaber</u>, 681 F.2d 1015, 1027-29 (5th Cir. 1982). <u>See also</u> <u>Johnson v. Carroll</u>, 369 F.3d 253, 259 (3d Cir. 2004) ("the basic requirement of due process that the defendant receive a fair trial in a fair tribunal") (internal quotations and citation omitted); <u>Avellino v. Herron</u>, 991 F. Supp. 722, 726 (E.D. Pa. 1997) ("the basic requirements of due process are not simply notice and the opportunity to be heard, but to be heard by a fair and impartial tribunal." (quoting <u>Sill v. Pennsylvania State Univ.</u>, 462 F.2d 463, 469 (3d Cir. 1972)).

In the matter before me, the Creditors presented no evidence that they had been denied due process of law in the Florida proceeding. While they complain that certain issues were raised late and that they were caught off guard at trial, they do not assert that they were deprived either of notice[15] or of an opportunity to be heard by Judge

---

[15] The Creditors do not assert that notice was denied to them, instead they argue that they did not receive *adequate* notice of certain issues, including judicial estoppel. The Creditors cite a decision marked "not for publication" for the proposition that for judicial estoppel to exist, the parties must be able to brief the issues and address them at oral argument. <u>Coast Automative Group, Ltd. v. VW Credit, Inc.</u>, 34 Fed. Appx. 818, 825 (3d Cir. 2002); Opposition Memorandum at 15. Their argument and reliance on <u>Coast Automotive</u>, however, miss the mark. As discussed above, the Creditors received due process and a full and fair opportunity to litigate in the Florida Court. Among other defenses, they addressed judicial estoppel at the April 20, 2009 hearing and were provided with the opportunity to brief the issue and present any and all

Cristol.  In fact, the Creditors readily admit that Judge Cristol gave them an equal and timely opportunity to brief the issues raised at the hearing.  It may have been more convenient or perhaps more advantageous for the Creditors to research or perform discovery on the issues raised allegedly for the first time at the April 20, 2009 hearing.  But such an objection does not amount to a denial of due process, particularly when: (1) The Creditors failed to raise this issue at or immediately after the hearing; (2) the Creditors had adequate time and opportunity to research and brief the issues; (3) the litigation between the parties has been going on, in one form or another, for nearly a decade; and (4) the Creditors themselves set or, at a minimum, agreed to the time-line for

---

arguments to Judge Cristol.  See Taylor v. Slick, 178 F.3d 698, 703 (3d Cir. 1999) ("To satisfy due process requirements, the notice provided must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present objections.  The level of notice to be given, however, depends on the interest at issue because due process is flexible and calls for such procedural protections as the particular situation demands.") (internal citations and quotations omitted).  Even after they had clear notice that certain issues would be raised in the Florida litigation, the Creditors did not ask for additional time to prepare for or present those issues.

17

submitting post-trial submissions.[16] See Transcript of April 20, 2009 hearing at p. 60,

attached as Exhibit 4, docket entry no.158-9.

The Creditors cite no law supporting their proposition that due process

requires that a party to be afforded an opportunity to take discovery or brief an issue

before a hearing. Perhaps most importantly, the Creditors' failure to object to the

procedure employed by Judge Cristol or to ask for additional time, at the time that such an

objection or request could most easily have been recognized and accommodated, is

glaringly apparent. Pa. Tr. at 28-29.[17] Finally, I have found no suggestion in anything

_____

[16] For these reasons, I also reject the Creditors' complaint that they were prejudiced
because the April 20, 2009 hearing before Judge Cristol was scheduled "to be a limited hearing"
per a March 26, 2009 Order, as lacking any merit. Pa. Tr. at 26; docket entry 34 in Rosenberg
Case. The March 26, 2009 Order stated, in relevant portion, that "the Court shall consider only
. . . threshold issues under Section 303(b) of the Bankruptcy Code." That order cannot lead to a
conclusion that the Creditors lacked a full and fair opportunity to litigate for at least four reasons.
First, the issues in question actually are threshold issues under Section 303(b). Second, the order
does not specifically preclude discussion of the legal doctrines determined by Judge Cristol's
Opinion. Third, when they did know the issues were to be raised, the Creditors did not ask at the
April 20, 2009 hearing for additional time to prepare their case. Fourth, the order is irrelevant to
whether the Creditors received notice and hearing – due process of law –  regarding the
ultimate issues determined by Judge Cristol in the Opinion. That which actually occurred at, and
after, the April 20, 2009 hearing determined if the Creditors received their due process rights.

[17] "THE COURT: And what did Judge Cristol say when you asked him for more time, or
to prevent these issues from coming in at the hearing?
      MR. LEVITT: We didn't. And - -
      THE COURT: I'm sorry?
      MR. LEVITT: We did not ask him at the hearing.
      THE COURT: Okay.
      MR. LEVITT: We went to the hearing and the way that was resolved was that each party
would submit proposed findings of fact and conclusions of law after the hearing.
      And the procedure that we have, sometimes, in South Florida - - it's a little different - -
Judges often ask the parties to submit the decision, essentially write the decision, and the Judge
will have both parties' writings and then the Judge can make changes, if he wants to. And, and
we followed that procedure here.
      So each side submitted - -

presented by the Creditors that Judge Cristol is not or was not an impartial jurist. I

therefore conclude that the Creditors received a full and fair opportunity to litigate the

Rosenberg matter in the Florida Bankruptcy Court.


## 2.  Identity of Issues

The second prong of the four-part collateral estoppel test at issue here is

whether the dispute presented in this involuntary petition and those determined by Judge

Cristol's Opinion are identical.  According to the Second Restatement:

> [S]everal factors . . . should be considered in deciding whether . . . the
> "issue" in the two proceedings is the same, for example:  Is there a
> substantial overlap between the evidence or argument to be advanced in the
> second proceeding and that advanced in the first?  Does the new evidence
> or argument involve application of the same rule of law as that involved in
> the prior proceeding?  Could pretrial preparation and discovery relating to
> the matter presented in the first action reasonably be expected to have
> embraced the matter sought to be presented in the second?  How closely
> related are the claims involved in the two proceedings?

Restatement (Second) of Judgments §27, cmt. c.  Identity of the issues "is established by

showing that the same general rules govern both cases and that the facts of both cases are

indistinguishable as measured by those rules. Bradburn Parents Teacher Store, Inc. v. 3M

(Minnesota Mining and Mfg. Co.), No. Civ. A. 02-7676, 2005 WL 736629, at *5 (E.D.

Pa. Mar. 30, 2005) (citing Suppan v. Dadonna, 203 F.3d 228, 233 (3d Cir. 2000)).  In my

---

THE COURT: And, and what did you do to object to that procedure in Florida?
MR. LEVITT: We did not object to that procedure."

Pa. Tr. at p. 28, line 23 - p. 29, line 17.

discussion below, I compare the holdings in Judge Cristol's Opinion with the issues

presented in the involuntary petitions before me. Through that comparison, I have

determined that at least three of the six alternative holdings of Judge Cristol's Opinion

overlap substantially in the realm of evidence, facts, and law with the evidence, facts, and

law inherent in the litigation here. Collateral estoppel therefore applies and I will dismiss

the involuntary petitions before me with prejudice.[18]


## C. The Creditors Are Not Parties in Interest


Judge Cristol held that the Creditors, who are parties in all of these cases,

are not the real parties in interest in the Florida case and therefore lack standing to file

involuntary petitions as a matter of law. In re Rosenberg, 414 B.R. at 842. This identical

issue is before me and therefore this element of collateral estoppel applies. Judge Cristol

held that, pursuant to Federal Rule 17(a)(1)[19] and Section 1109(b) of the Bankruptcy

---

[18] The Third Circuit has held that alternative findings may be given preclusive effect. Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc., 458 F.3d 244 (3d Cir. 2006). The parties do not dispute that each of the grounds on which Judge Cristol based his dismissal of the Rosenberg Case is independent of each of the alternative grounds. Finding that any one of those grounds is at issue in the cases before me would lead me to apply the collateral estoppel effect of Judge Cristol's Opinion. As noted above, I have found that three of the issues are identical.

[19] Rule 17(a)(1) is applicable to bankruptcy proceedings through Fed. R. Bankr. P., Rule 7017, and states in relevant portion: "An action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P., Rule 17(a)(1).

Code,[20] the Creditors lack standing to initiate or pursue the Rosenberg involuntary

bankruptcy proceeding because the Trustee and Agent were and are the real parties in

interest under the existing loans. Id. According to the Florida Court:

> [T]he Original Petitioning Creditors and Ashland Funding were nothing more than
> pass-through entities to facilitate the securitization transactions. No actual injury
> can be traced to these entities, which could potentially be redressed by the
> bankruptcy estate. These entities have no pecuniary interest or stake in the future
> administration of a bankruptcy estate should this Court enter an order for relief in
> this case. If any economic stake exists in this case, it runs in favor of the Trustee
> or Lyon, as successor servicer and as agent for the Trustee. Taking all these
> factors into consideration, the Original Petitioning Creditors and Ashland Funding
> are not parties in interest and therefore lack standing as a matter of law to file an
> involuntary petition against Rosenberg.

414 B.R. at 842.

Judge Cristol concluded, contrary to the protestation of the losing party, that

the Creditors lacked standing to bring the involuntary petition against Rosenberg. The

Creditors insist that "all of the critical rulings made by Judge Cristol were made in

reliance on the language contained in the Rosenberg Limited Guaranty stating that the

debts are owed to the 'Agent.'" Opposition Memorandum at 8. The portion of Judge

Cristol's ruling regarding party in interest, however, is based on no such reliance on the

---

[20] Section 1109(b) states in relevant portion: "A party in interest . . . may raise and may
appear and be heard on any issue in a case under this chapter." 11 U.S.C. §1109(b). The
reference to Section 1109(b) serves as an exemplar, rather than controlling, because neither the
Florida case nor the case before me has yet to proceed to Chapter 11. Judge Cristol's Opinion
notes that "party in interest" is not defined by the Bankruptcy Code, but generally includes "all
persons whose pecuniary interest are [sic] directly affected by the bankruptcy proceedings." 414
B.R. at 842 (reference to typo in original) (internal quotations and citations omitted).

language of the Rosenberg Guaranty. The Opposition Memorandum provides no argument to the contrary.

The Putative Debtors are in privity with Rosenberg (this has not been disputed) and Judge Cristol's discussion of the relationship of the parties in interest is applicable to the cases before me. To determine whether the issues arising in the two cases (the case before me and the Rosenberg case) are the same, I follow the law discussed above and I must decide if (1) the evidence and arguments in the Florida hearing are similar to those in the cases before me and (2) the claims are closely related. Actually, the evidence, arguments, and claims are identical. The Putative Debtors' Pre-Trial Memorandum of Law in Support of the Motion To Dismiss (docket entry no.101 at 34-42) includes precisely the same arguments regarding party in interest and cites the same cases, Rules, and sections of the Bankruptcy Code that were adopted by Judge Cristol in his Opinion. I accept those arguments and the supporting citations. The party in interest issue overlaps both of the two proceedings on all fours. My application of collateral estoppel, furthermore, clearly serves one of the purposes intended by this doctrine – prevention of duplicative litigation. I find and conclude, therefore, that collateral estoppel applies to this issue.

## D.  The Settlement Agreement is a Novation and the Creditors Do Not Hold Separate and Distinct Claims Against the Putative Debtors

Similarly, I give preclusive effect to Judge Cristol's determination that the Settlement Agreement constitutes a novation because that issue is identical to an issue in these proceedings.  Judge Cristol held that "[p]ursuant to the terms of the Settlement Agreement, the Master Leases were modified and consolidated into a single obligation constituting a claim by Lyon, as successor servicer and agent for the Trustee."  414 B.R. at 844.  In other words, Judge Cristol held that the Settlement Agreement cancelled previous obligations in favor of a new contract that now runs exclusively to the Agent. The Settlement Agreement is a single document entered into by the Putative Debtors, Rosenberg, U.S. Bank as Trustee, and Lyon Financial as Agent (docket entry no. 158; "Main Document").   Again, the Putative Debtors have argued this precise issue of novation before me, asserting: "Pursuant to the terms of the Settlement Agreement, the Master Leases were modified and consolidated into a single obligation constituting a claim by Lyon, as successor servicer and as agent for the Trustee" (docket entry no.101 at 56-57).  The legal and factual issues presented in both the Florida proceeding and this proceeding are essentially the same and I again accept the Putative Debtors' arguments. Collateral estoppel therefore applies.

The Creditors object that the different language of the Rosenberg Guaranty compared to the NMI Guaranty precludes collateral estoppel.  Opposition Memorandum

at 8.[21]  This argument holds a certain limited weight because Judge Cristol quotes the

language of the Rosenberg Guaranty in his discussion of novation, as follows: "The

Limited [Rosenberg] Guaranty stated . . . that Rosenberg 'unconditionally, absolutely and

irrevocably guarantees the full and prompt payment when due . . . <u>to the Agent</u>,'

identified in the Settlement Agreement as Lyon." 414 B.R. at 844 (emphasis in original).

This language differs from the NMI Guaranty, which speaks in a corresponding

paragraph of payment due to "the respective Lessor" (defined as the Creditors). <u>See</u> NMI

Guaranty at ¶2; Exhibit B (docket entry no.158, Exhibit. 1-B).

But as the Putative Debtors point out in their pleadings and at Oral

Argument, the NMI Guaranty, when read as a whole, establishes obligations that run

solely to the Agent. <u>See</u> Pa. Tr. at 7-10. <u>See also</u> NMI Guaranty at ¶2 ("If a monetary

Event of Default shall occur . . . in the Agent's sole but reasonable discretion . . . the

Guarantors shall, upon demand by the Agent, pay the Obligations . . . ."); NMI Guaranty at

¶ 4 ("Any amounts received by the Agent from whatever source on account of the

Obligations may be applied by the Agent toward the payment of such of the Obligations .

. . ."). Therefore, contrary to the suggestion of the Creditors, I find no material difference

between the Rosenberg Guaranty executed by Rosenberg and the NMI Guaranty executed

by the Putative Debtors.  In addition, Judge Cristol's holding that the Settlement

---

[21] The Creditors also argue that the Settlement Agreement imposes direct liability on the
Putative Debtors as obligors (an argument raised for the first time in the Opposition
Memorandum), but fail to explain how this theory, if true, would affect or undermine any of the
holdings of Judge Cristol's Opinion.  Opposition Memorandum at 11-12.

Agreement was a novation was not premised on the language of the Rosenberg Guaranty.
414 B.R. at 844.  I therefore hold that collateral estoppel applies to the portion of Judge
Cristol's Opinion holding that the Settlement Agreement constitutes a novation.

As a novation, therefore, the settlement documents, taken as a whole,
establish that the Creditors no longer hold separate and distinct claims against the
Putative Debtors.  Pursuant to Section 303(b) of the Bankruptcy Code, the petition must
be brought by at least three creditors.  Because the novation rolled all obligations
together,[22] the Creditors do not hold separate and distinct claims.  The involuntary
bankruptcies should be dismissed.


## E.  The Creditors Are Judicially Estopped

Finally, collateral estoppel applies to Judge Cristol's ruling that the
Creditors are judicially estopped[23] from advancing the involuntary bankruptcies.  I
initially held that I would not apply judicial estoppel in these cases.[24]  When I received

---

[22] See also the discussion about the Second Bucks County Action, which was brought in
the name of Lyon as Agent, rather than on behalf of the Creditors.  Page 9, above, and pages 26-
27, below.

[23] "Judicial estoppel is appropriate where (1) the party's later position is 'clearly
inconsistent' with its earlier position, (2) the party succeeded in persuading the court to accept its
earlier proposition, and (3) the party would derive an unfair advantage or impose an unfair
detriment on the opposing party if not estopped."  414 B.R. at 842, citing New Hampshire v.
Maine, 532 U.S. 742, 749-51 (2001).

[24] See pages 4 & 5 of this Opinion, above.

and reviewed Judge Cristol's Opinion, however, I immediately announced to all parties

that I would reconsider that ruling.  Upon my examination of the Opinion, relevant case

law, and the parties' arguments, I now believe both that (1) the issues regarding judicial

estoppel presented by the Rosenberg and the Putative Debtors cases are identical and (2)

the Creditors' objection regarding the doctrine of unmixed question of law falls short.

Therefore, I agree with Judge Cristol's holding that the Creditors are judicially estopped

from pursuing these involuntary bankruptcies.

      In holding that judicial estoppel  applied in the Rosenberg Case, Judge

Cristol found that the Creditors took an inconsistent position over the course of their

litigation against Rosenberg.  The Agent (Lyon) asserted that the Rosenberg debt is owed

to it and that Lyon filed the Second Bucks County Litigation (and obtained a judgment by

confession), whereas the Creditors asserted that the Rosenberg debt is owed to them and

the Creditors filed the involuntary petition against Rosenberg.  414 B.R. at 842-43.

      Judge Cristol found and concluded:

> The Court believes that the explanation for taking this inconsistent position
> was to <u>artificially create six creditors</u> for the <u>improper purpose</u> of attempting to
> satisfy the provisions of Section 303(b) of the Bankruptcy Code.  Consequently,
> Lyon, through the <u>artifice</u> of utilizing the Original Petitioning Creditors in filing
> this involuntary case, is judicially estopped from taking a position in this Court that
> is inconsistent with and different from the earlier position it took in the Second
> Bucks County Action.  Therefore, Lyon, and the Original Petitioning Creditors on
> whose behalf the Lyon representative signed the petition, is judicially estopped
> from adopting a different position in this case.

414 B.R. at 843 (emphasis added).

The facts as they relate to the Creditors before me are identical. That is, Lyon asserted that the NMI debt is owed to it and Lyon filed the Second Bucks County Action against the Putative Debtors, while the six Creditors, and not Lyon, asserted that the NMI debt was owed to them and the Creditors filed the involuntary petitions against the Putative Debtors. Judge Cristol's holding on judicial estoppel has now been presented for my consideration. See, e.g., the Putative Debtors' Pre-Trial Memorandum of Law in Support of the Motion to Dismiss (docket entry no.101 at 43-47). I have no question that the claims, rules of law, and facts relating to this issue overlap. For these reasons, I hold that collateral estoppel applies to Judge Cristol's holding and the Creditors are judicially estopped from pursuing the involuntary bankruptcies.

The Creditors argue alternatively that the Court should not apply Judge Cristol's judicial estoppel ruling because of an exception to the collateral estoppel doctrine for an "unmixed question of law." Opposition Memorandum at 18-21. This exception would prevent application of collateral estoppel if "the issue involved is one of law and either (1) the two actions involve claims that are substantially unrelated or (2) a new determination of the legal issue is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws." Burlington Northern R.R. Co. v. Hyundai Merch. Marine Co., Ltd., 63 F.3d 1227, 1229 (3d Cir. 1995). The purpose of the unmixed question of law exception to collateral estoppel remains "'far from clear.'" Id. at 1236 (quoting the Supreme Court in United States v. Stauffer Chemical Co., 464 U.S. 165, 172 (1984)).

27

The Third Circuit in <u>Burlington Northern</u> remarked that the viability of this exception had been called into question in <u>Stauffer</u>. <u>Id.</u> at 1229. This exception is an "equitable doctrine" that "sounds a note of caution where the issue involved is the choice or formulation of the governing rule of law." <u>Nat'l R.R. Passenger Corp. v. Penn. Pub. Util. Comm'n</u>, 288 F.3d 519, 530 (3d Cir. 2002). Despite the "note of caution" in <u>Nat'l R.R. Passenger Corp.</u>, I observe that the Supreme Court in <u>Stauffer</u> said that it had no reason to apply the "unmixed questions of law" exception when doing so would substantially frustrate the collateral estoppel doctrine's purpose of protecting litigants from burdensome relitigation and of promoting judicial economy. 464 U.S. at 172.

The Creditors, however, argue that the second prong of this exception applies here. They insist that collateral estoppel must be avoided because the standards regarding judicial estoppel in the Eleventh Circuit (where Judge Cristol sits) and in the Third Circuit differ. <u>See</u> Pa. Tr. at 58-59; Opposition Memorandum at 18-21. The Creditors maintain that the Third Circuit standard for applying judicial estoppel is considerably more rigorous than the standard applied in the Eleventh Circuit. The Third Circuit, unlike the Eleventh Circuit, requires a finding of bad faith to apply judicial estoppel.

It is true that the Third Circuit, unlike the Eleventh Circuit, requires some finding of bad faith to support a determination of judicial estoppel. <u>Compare  Krystal Cadillac-Oldsmobile GMC Truck, Inc., v. General Motors Corp.</u>, 337 F.3d 314, 319 (3d Cir. 2003) <u>with</u> <u>Stephens v. Tolbert</u>, 471 F.3d 1173, 1177 (11th Cir. 2006). I believe that

28

this distinction is insufficient for me to reject the application of collateral estoppel to the

judicial estoppel conclusions in Judge Cristol's Opinion for two reasons.

First, the difference between the judicial estoppel standards in the Eleventh

Circuit compared to the Third Circuit is not great enough to merit retrial of this issue.

Stauffer, 464 U.S. at 172. The Third Circuit's bad faith element in judicial estoppel

notwithstanding, the fundamental doctrines of the two circuits are not at odds. Other

Third Circuit decisions interpreting the unmixed question of law doctrine emphasize that

when the facts and law in the first and second proceedings are essentially the same, (and

not much time has passed) collateral estoppel should apply. See, e.g., Nat'l R.R.

Passenger Corp., 288 F.3d at 529-31 (applying collateral estoppel and declining to apply

the unmixed question of law exception); Henglein v. Colt Indus. Operating Corp., 260

F.3d 201, 212-13 (3d Cir. 2001) (rejecting the unmixed question of law doctrine and

noting: "Significantly, the Supreme Court has 'had no trouble finding [the exception]

inapplicable [where there is] close alignment in both time and subject matter' between the

two cases") (quoting Stauffer, 464 U.S. at 170) (typo notations in original); and In re G-I

Holdings Inc., No. Civ. 02-CV-3082(WGB), 2003 WL 22273256 (D.N.J. Aug. 8, 2003).[25]

---

[25] I have considered Justice White's concurring opinion in Stauffer, 464 U.S. at 174,
which the Third Circuit cited approvingly in Burlington Northern, 63 F.3d at 1236 n. 12. The
Creditors rely on Justice White's concurrence in the Opposition Memorandum at 19. Justice
White expressed his concern about applying, via collateral estoppel, the substantive law of one
circuit that is contrary to the substantive law in another circuit. Such an application might fail to
support the purposes of collateral estoppel. 464 U.S. at 178. In these cases, however, the judicial
estoppel doctrine applied by Judge Cristol in Rosenberg does not materially differ from the
doctrine as applied in the Third Circuit. This is particularly so because Judge Cristol expressly
found the Creditors' bad faith when he concluded that they had acted for an improper purpose to

Second, I believe that Judge Cristol's findings and conclusions manifestly satisfy any bad faith requirement for judicial estoppel, even if no such requirement exists in the Eleventh Circuit. Judge Cristol expressly found that the Creditors "artificially create[d] six creditors for the improper purpose of attempting to satisfy the provisions of Section 303(b) of the Bankruptcy Code" and used an "artifice" to effect its improper ends. 414 B.R. at 843. His express finding and conclusion satisfies the Third Circuit's additional element for judicial estoppel that "the party <u>changed his or her position in bad faith</u> - i.e. with intent to play fast and loose with the court." <u>Krystal</u>, 337 F.3d at 319 (emphasis in original). Judge Cristol's clear recognition of the Creditors' intentional inconsistency, artificial gerrymandering, and use of an artifice is both (1) an additional reason why retrial in this court would not be advantageous (one of the policies behind collateral estoppel) and (2) an answer to the Creditors' charge that the Putative Debtors are somehow escaping unfavorable law by not facing a trial in the Third Circuit. <u>See</u> Opposition Memorandum at 18. In short, the Creditors have failed to show that applying collateral estoppel to Judge Cristol's judicial estoppel determination would be inequitable. I therefore reconsider my earlier determination and I now hold, based on the facts and law before me and on collateral estoppel, that the Creditors are judicially estopped from pursuing the involuntary petitions against the Putative Debtors.

---

create an artifice intended to satisfy the Bankruptcy Code. 414 B.R. at 843.

# IV. CONCLUSION

Upon the findings, conclusions, and rationale stated above, I will grant the Putative

Debtors' Motion for a Determination of Collateral Estoppel through the accompanying

Order and I will thereby dismiss the above-captioned involuntary bankruptcy petitions

with prejudice.

RICHARD E. FEHLING
United States Bankruptcy Judge

Dated:  December 28, 2009

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re: NATIONAL MEDICAL          :
       IMAGING, LLC          :          Case No. 08-17351JKF
       Putative Debtor          :

_____

In re: NATIONAL MEDICAL IMAGING  :          Case No. 08-17348JKF
       HOLDING COMPANY, LLC          :
       Putative Debtor          :

_____

## **ORDER**

AND NOW this 28th day of December, 2009, upon my consideration of the Putative Debtors' Motion for Determination of Collateral Estoppel and upon the findings of fact, conclusions of law, and rationale set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Motion is GRANTED and both of the above-captioned bankruptcy cases are HEREBY DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that I retain jurisdiction to determine possible sanctions pursuant to Section 303(i) of the Bankruptcy Code, 11 U.S.C. §303(i).

IT IS FURTHER ORDERED that the Putative Debtors have until

January 4, 2010, if they are so inclined, to file a motion requesting possible

sanctions against the Creditors pursuant to Section 303(i) of the Bankruptcy Code,

11 U.S.C. §303(i).[1]

BY THE COURT

RICHARD E. FEHLING
United States Bankruptcy Judge

---

[1] If Putative Debtors file a motion requesting sanctions, they shall also file a notice requiring the Creditors to file their response by January 20, 2010, and shall schedule the hearing on their motion to be heard on January 25, 2010, at 9:30 a.m., prevailing time.